**Nos. 24-50721 & 25-50096**

# In the United States Court of Appeals for the Fifth Circuit

COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION; NETCHOICE, L.L.C.,

*Plaintiffs-Appellees*,

*v.*

KEN PAXTON, ATTORNEY GENERAL, STATE OF TEXAS,

*Defendant-Appellant.*

*consolidated with*

STUDENTS ENGAGED IN ADVANCING TEXAS; M.F., BY AND THROUGH NEXT FRIEND, VANESSA FERNANDEZ; AMPERSAND GROUP, L.L.C.; BRANDON CLOSSON,

*Plaintiffs-Appellees*,

*v.*

KEN PAXTON, ATTORNEY GENERAL, STATE OF TEXAS,

*Defendant-Appellant.*

On Appeals from the United States District Court
for the Western District of Texas, Austin Division
Case Nos. 1:24-cv-849 & 1:24-cv-945

## CONSOLIDATED REPLY BRIEF FOR APPELLANT

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

WILLIAM R. PETERSON
Solicitor General

CAMERON FRASER
Cameron.Fraser@oag.texas.gov
Assistant Solicitor General

ERIC S. ABELS
Assistant Attorney General

*Counsel for Defendant-Appellant*

# Table of Contents

Table of Authorities ..................................................................................ii

Introduction ............................................................................................ 1

Argument................................................................................................2

    I.     SEAT's Brief Confirms That It Lacks Article III Standing To Challenge HB18. .........................................................................2

    II.    Plaintiffs All But Ignore *Moody's* Requirements—And Fail To Satisfy Them. ......................................................................6

    III.   HB18's Threshold Coverage Definitions Are Content-Neutral. ........... 13

    IV.   HB18's Targeted-Advertising Provisions Apply To Commercial Speech, Not Public-Service Announcements.................... 15

    V.    HB18's Terms Are Not Unconstitutionally Vague. ............................ 16

    VI.   HB18 Is Not A Prior Restraint. ............................................... 19

    VII.  Section 230 Does Not Preempt HB18................................ 21

    VIII. HB18 is Severable. .................................................................. 25

    IX.   Amici's Arguments Are Cumulative And Unpersuasive....................26

    X.    The Remaining Injunction Factors Favor Texas. ...............................28

Conclusion.............................................................................................. 29

Certificate of Service............................................................................... 30

Certificate of Compliance ....................................................................... 31

# Table of Authorities

Page(s)

**Cases:**

*AAPS, Inc. v. Tex. Med. Bd.*,
627 F.3d 547 (5th Cir. 2010) ...............................................................................5

*Alexander v. United States*,
509 U.S. 544 (1993) .............................................................................................20

*American Communications Ass'n, CIO v. Douds*,
339 U.S. 382 (1950) .............................................................................................20

*Baggett v. Bullitt*,
377 U.S. 360 (1964) ............................................................................................. 17

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963) ......................................................................................... 3, 19

*Book People, Inc. v. Wong*,
91 F.4th 318 (5th Cir. 2024) ........................................................................... 3, 4

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011) ..................................................................................... 15, 29

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ......................................................................................... 3, 4

*Deep S. Ctr. for Env't Just. v. U.S. EPA*,
138 F.4th 310 (5th Cir. 2025) ............................................................................4

*Doe v. Facebook, Inc.*,
142 S. Ct. 1087 (2022) .......................................................................................24

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) ............................................................................23

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) ............................................................................................ 16

*Free Speech Coal., Inc. v. Paxton*,
145 S. Ct. 2291 (2025) .................................................. 11, 13, 15, 23, 26, 27

*Free Speech Coalition, Inc. v. Paxton*,
95 F.4th 263 (5th Cir. 2024), *aff'd*, 145 S. Ct. 2291 (2025) ..............................22

*Glass v. Paxton*,
900 F.3d 233 (5th Cir. 2018) ..............................................................................4

*Hoffman v. Westcott*,
131 F.4th 332 (5th Cir.), *cert. dismissed*, 145 S. Ct. 1951 (2025) .........................28

*Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue,*
  460 U.S. 575 (1983) ............................................................20
*Moody v. NetChoice, LLC,*
  603 U.S. 707 (2024) .................................................*passim*
*Murthy v. Missouri,*
  603 U.S. 43 (2024) ............................................... 13, 29
*Near v. Minnesota ex rel. Olson,*
  283 U.S. 697 (1931) ................................................. 19
*NetChoice, LLC v. Bonta,*
  113 F.4th 1101 (9th Cir. 2024) ................................20-21
*NetChoice, LLC v. Fitch,*
  134 F.4th 799 (5th Cir. 2025) ................................ 1, 7, 8
*Nken v. Holder,*
  556 U.S. 418 (2009) ....................................................28
*One Lot Emerald Cut Stones & One Ring v. United States,*
  409 U.S. 232 (1972) .................................................. 12
*Prince v. Massachusetts,*
  321 U.S. 158 (1944) ...................................................26
*Reed v. Town of Gilbert,*
  576 U.S. 155 (2015) ...........................................13-14, 20
*Doe ex rel. Roe v. Snap, Inc.,*
  144 S. Ct. 2493 (2024) ............................................24-25
*Doe ex rel. Roe v. Snap, Inc.,*
  88 F.4th 1069, 1071 (5th Cir. 2023) (mem. op.) *cert. denied,* 144 S.
  Ct. 2493 (2024)........................................................22
*Doe ex rel. Roe v. Snap, Inc.,*
  88 F.4th 1069 (5th Cir. 2023) (mem. op.) *cert. denied,* 144 S. Ct.
  2493 (2024) ..............................................................24
*Rose v. Doctors Hosp.,*
  801 S.W.2d 841 (Tex. 1990)........................................25
*Stratton Oakmont, Inc. v. Prodigy Servs. Co.,*
  No. 31063/1994, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) ....................22
*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) ...................................................5
*Turner Broad. Sys., Inc. v. FCC,*
  512 U.S. 622 (1994)..............................................14, 15

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023) .......................................................... 13
*United States v. Am. Libr. Ass'n, Inc.*,
  539 U.S. 194 (2003) (plurality opinion) ........................... 27
*United States v. Williams*,
  553 U.S. 285 (2008) .....................................................17, 18
*Vance v. Universal Amusement Co.*,
  445 U.S. 308 (1980) ...........................................................20
*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
  455 U.S. 489 (1982) ........................................................... 16
*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) .......................................................14, 18
*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ...............................................................29

**Constitutional Provisions, Statutes, and Rules:**
U.S. Const. amend. I.................................. 1, 2, 14, 20, 24, 28
47 U.S.C.:
  §230........................................... 2, 21, 22, 23, 24, 25
  §230(b)(3) .........................................................22
  §230(b)(4) .........................................................23
  §230(c)(1) ........................................................ 21, 24
  §230(e)(3) ........................................................ 21, 23
Tex. Bus. & Com. Code:
  §509.001(4) .....................................................10
  §509.002(b)(10)....................................................14
  §509.052(2)(D) .................................................. 16
  §509.053 ...........................................................25
  §509.053(a) ....................................................3, 9, 17
  §509.055 ................................................... 15, 16, 26
Tex. Gov't Code §312.013(a)........................................25

**Other Authorities:**
1 Joseph Story, *Commentaries on the Constitution of the United States*
  §430, at 412 (1833).............................................26
Act of May 28, 2023, 88th Leg., R.S., ch. 795, §5.01, 2023 Tex. Gen.
  Laws 2516 .........................................................25

# Introduction

Texas House Bill 18 (HB18) shields minors from the most egregious online content while preserving their access to social media and expressive material. The Students Engaged in Advancing Texas (SEAT) and Computer & Communications Industry Association (CCIA) plaintiffs, echoed by amici, sidestep *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), and invert the burden in pre-enforcement facial challenges. And although SEAT in particular relies on speculative injuries untied to HB18's text, thus defeating its claim of Article III standing, both plaintiffs misrepresent HB18's narrow scope.

Plaintiffs seek a pre-enforcement facial injunction of HB18, and thus this case hinges on *Moody*, which places a significant burden on plaintiffs seeking such an extraordinary and disfavored remedy. Yet plaintiffs barely acknowledge *Moody* and instead repeatedly insist that Texas hasn't met *its* burden under the First Amendment. But it is *their* burden to show that HB18 is facially invalid: that is the "price" they must pay for seeking such relief. *Id.* at 744. Under *Moody*, that high burden entails mapping "the full scope of the law's coverage," distinguishing constitutional from unconstitutional applications, and showing that the latter substantially outweigh the former, *id.* at 744—a "daunting, if not impossible task" in speculative pre-enforcement suits, *id.* at 745 (Barrett, J., concurring). To plaintiffs, however, *Moody* is an afterthought. Their failure to adequately address (or even acknowledge) their burden under *Moody* alone justifies vacating the preliminary injunction, as this Court recently held as to the same plaintiffs in a similar case. *NetChoice, LLC v. Fitch*, 134 F.4th 799, 808-09 (5th Cir. 2025).

On the merits of the First Amendment issue, HB18 targets only that which promotes, glorifies, or facilitates the most insidious content: suicide, self-harm, eating disorders, substance abuse, stalking, bullying, harassment, grooming, trafficking, child pornography, and other sexual exploitation or abuse. But one wouldn't know that from reading plaintiffs' briefs, which attack a statute that doesn't exist—one that censors popular songs heard on the radio, classic literary works taught in middle school, Academy-Award-winning movies, and even "casual discussions of controversial topics." This distortion exemplifies plaintiffs' failure to grapple with *Moody*'s demand for a comprehensive analysis of HB18's actual applications.

Plaintiffs' remaining arguments—e.g., that HB18 is a prior restraint, unconstitutionally vague, and preempted by §230—likewise falter. HB18 requires only post-publication filtering, not blanket pre-publication censorship. And it does so only for minors. Its terms are clear, and its purpose aligns with §230, which expressly does not preempt consistent state laws. The Court should reverse or, at minimum, vacate the injunctions and remand for a proper *Moody* analysis.

## ARGUMENT

### I. SEAT's Brief Confirms That It Lacks Article III Standing To Challenge HB18.

The SEAT plaintiffs' alleged injuries are speculative and disconnected from HB18's narrow scope, and thus they lack Article III standing.

First, the SEAT plaintiffs argue (at 16-22) that their members' activities are chilled by HB18's monitoring-and-filtering provisions. But SEAT's arguments (at 20) that HB18 prohibits things like anti-bully advocacy, anti-sex-trafficking advocacy, jokes about eating disorders, listening to songs, and researching debate topics, bear no plausible connection to HB18's text. HB18 narrowly targets content promoting, glorifying, or facilitating things like self-harm, child pornography, and human trafficking, not anything conceivably related to such topics. Tex. Bus. & Com. Code §509.053(a). Anti-bullying advocacy does not promote bullying, nor does making jokes about eating disorders facilitate them. These examples fail to demonstrate any realistic risk that HB18's provisions would restrict SEAT's or its members' intended speech or content they wish to view, rendering their alleged injuries speculative and insufficient to confer standing.

Second, the SEAT plaintiffs argue (at 16-18) that regulations affecting intermediaries, like DSPs, confer standing, citing cases like *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963), and *Book People, Inc. v. Wong*, 91 F.4th 318 (5th Cir. 2024). That too is wrong. Standing requires a plausible connection between the plaintiff's injury and the statute's application, not merely its effect on third parties, and the injury must be "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). *Bantam Books* involved direct government threats to publishers and coercing censorship of specific books, which injured the plaintiffs by negatively impacting their book sales. 372 U.S. at 64 n.6. HB18 affects SEAT and its members in no analogous way, and its filtering requirements apply to a narrow subset of

3

content, and only for minors. Those requirements align with existing DSP practices, like removing trafficking posts on X. *Book People* addressed a Texas law mandating book ratings in schools, and this Court emphasized that the law "arguably proscribe[d] Plaintiffs' continued sales to public schools." 91 F.4th at 330. That too is a context unrelated to HB18's focus on filtering egregious material from minors' view, and SEAT does not argue any similar financial injury. Moreover, "[t]he Supreme Court has long noted its 'reluctan[ce] to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment.'" *Deep S. Ctr. for Env't Just. v. U.S. EPA*, 138 F.4th 310, 322 (5th Cir. 2025) (quoting *Clapper*, 568 U.S. at 413). That DSPs will block content the SEAT plaintiffs want to view is speculative and implausible.

Third, the SEAT plaintiffs incorrectly argue (at 21, 27) that, for purposes of standing, this Court must "assume" that its claims are valid and that it faces a credible threat of enforcement. But standing demands a plausible, non-speculative injury directly tied to the statute's text, not blind acceptance of hypothetical statutory applications. *Clapper*, 568 U.S. at 410. And "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Glass v. Paxton*, 900 F.3d 233, 239 (5th Cir. 2018). SEAT's fear that jokes and debate research will be filtered ignores HB18's precise focus on content "promoting, glorifying, or facilitating" things like suicide and trafficking, and elevates subjective fear over objective analysis. The Court need

not credit unreasonable and implausible hypotheticals when HB18's text addresses only the most egregious online material.

Fourth, the SEAT plaintiffs argue (at 30-31) that they have associational standing on behalf of their members, like students whose speech is chilled. But associational standing requires at least one member with individual standing and an organizational purpose aligned with the litigation. *AAPS, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010). Here, SEAT's members lack individual standing because their alleged injuries—such as fear that HB18 would target 17-year-olds' debate research (at 19-20)—are speculative and don't implicate HB18's provisions, which target only the most abhorrent content, not academic research. And SEAT's broad purpose of youth engagement is too vague to confer standing without specific, concrete member harm. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).

Finally, the SEAT plaintiffs argue (at 22) that DSPs testified HB18 requires restricting protected content SEAT and its members want to send and receive. Yet most of their citations (ROA.25-50096.161 ¶ 8; ROA.25-50096.168-69 ¶ 13; ROA.25-50096.181 ¶ 11) are to testimony from users—not DSPs—speculating about "sex-positive parenting groups," "bipolar symptoms," and "gender-affirming care." The DSP testimony that they do cite (ROA.24-50721.129-130 ¶ 11; ROA.24-50721.154 ¶ 21) addresses general content moderation, not HB18's specific requirements. No DSP testimony mentions SEAT, M.F., Closson, or Ampersand, or their specific concerns, rendering this argument disconnected from any concrete injury.

The SEAT plaintiffs' speculative injuries are untethered to HB18's narrowly tailored language filtering only the most insidious online material, only for minors, and thus they fail to establish Article III standing. Their claims should be dismissed.

## II. Plaintiffs All But Ignore *Moody's* Requirements—And Fail To Satisfy Them.

Plaintiffs treat this case as a routine constitutional dispute, rather than a pre-enforcement facial challenge, ignoring the heavy burden imposed by the Supreme Court in *Moody*. Their failure to acknowledge *Moody*'s rigorous standard is fatal to their pre-enforcement facial challenge—both the Supreme Court and this Court have rejected such an approach.

In *Moody*, all nine justices of the Supreme Court agreed that pre-enforcement facial injunctions are disfavored and difficult to obtain. *See generally* 603 U.S. 707. Justice Kagan, writing for the majority, explained that plaintiffs must establish that "a substantial number of [the law's] applications are unconstitutional, judged in relation to [its] plainly legitimate sweep," a showing particularly difficult in pre-enforcement suits driven by speculative predictions about potential future enforcement. *Id.* at 723. Justice Barrett emphasized that obtaining a pre-enforcement facial injunction of a statute is a "daunting, if not impossible, task." *Id.* at 745 (Barrett, J., concurring).

Likewise, Justice Alito, joined by Justices Thomas and Gorsuch, emphasized that "parties mounting facial attacks [must] satisfy demanding requirements" because they must show that the statute "cannot be applied to anyone at any time

under any circumstances without violating the Constitution." *Id.* at 777-78 (Alito, J., concurring in the judgment). Justice Jackson noted that plaintiffs bringing pre-enforcement facial challenges "must clear a high bar." *Id.* at 748 (Jackson, J., concurring in part and concurring in the judgment). Justice Thomas explained that facial challenges are "fundamentally at odds with Article III" and that plaintiffs' task in securing them in complex cases is essentially "impossible." *Id.* at 752, 760-61 (Thomas, J., concurring in the judgment). This cross-ideological consensus underscores the uniquely difficult burden plaintiffs face when seeking to facially enjoin a statute before it takes effect.

A few months ago, this Court applied *Moody's* stringent requirements in *Fitch*, 134 F.4th at 807-09. The Court explained that *Moody* was not simply a reaffirmation of an existing standard: it "reframed the analysis for facial challenges." *Id.* at 803. With *Moody's* high bar, it is not enough for a district court to discuss the law's "inclusion and exclusion of some of the activities and actors arguably regulated by" a law. *Id.* at 808. Instead, district courts must "address the full range of activities the law covers, as required by *Moody*." *Id.* (cleaned up). Because the district court did not do so there, this Court vacated the preliminary injunction and remanded for a proper *Moody* analysis. *Id.* at 809.

Here, both sets of plaintiffs essentially disregard *Moody* and *Fitch*, and instead proceed as if Texas must prove HB18's constitutionality. The CCIA plaintiffs argue (at 44-45) that Texas overstates *Moody*'s burden because *Moody* didn't really change anything and instead merely reaffirmed the preexisting standard. Not true. *Moody*

"reframed" the analysis, as this Court explained in *Fitch*. 134 F.4th at 803. It imposed a heightened pre-enforcement burden, requiring plaintiffs to provide a comprehensive account of all statutory applications across platforms, content types, and age groups. *Moody*, 603 U.S. at 723, 731.

The CCIA plaintiffs also label (at 44-46) the State's articulation of the *Moody* standard as "granular" and "virtually impossible." But that is simply what *Moody* requires: "dealing with a broad swath of varied platforms and functions in a facial challenge" is "a daunting, if not impossible, task." 603 U.S. at 745 (Barrett, J., concurring); *see also id.* at 761 (Thomas, J., concurring) ("For cases such as these, where the constitutional analysis depends on complex, fact-specific questions, the task becomes impossible."); *id.* at 769 (Alito, J., concurring) ("Both statutes have a broad reach, and it is impossible to determine whether they are unconstitutional in all their applications without surveying those applications."). As *Fitch* correctly explained, plaintiffs' decision to bring a pre-enforcement facial challenge "comes at a cost." 134 F.4th at 807 (quoting *Moody*, 603 U.S. at 723).

The SEAT plaintiffs contend (at 32-33, 63-68) that the district court correctly applied *Moody*. But saying so doesn't make it true. The district court's *Moody* analysis was plainly inadequate: it did not analyze HB18's application outside a few hand-picked examples from plaintiffs' briefs. As in *Fitch*, without "determining the full scope of actors regulated by the Act and the activities it regulates, the district court did not apply *Moody* in the manner now required." 134 F.4th at 809. *Moody*'s consensus requires meeting an intentionally difficult standard for facial injunctions,

which the district court and plaintiffs are trying to waive away. Their failure to meet—or even engage with—this burden alone warrants reversal of the district court's injunctions.

But even if plaintiffs had acknowledged and applied the correct standard here, they have failed to meet their burden. They provide no comprehensive approach to HB18's applications. *Moody*, 603 U.S. at 744-45. They offer no detailed evaluation of how HB18's provisions apply to specific contexts or content types. They acknowledge no constitutional applications of it. Instead, they advance arguments that, among other things, mischaracterize HB18's scope, rely on speculative hypotheticals, and ignore the statute's numerous constitutional applications, all of which fall far short of demonstrating that unconstitutional applications of HB18 substantially outweigh constitutional applications.

First, the SEAT (at 52, 60) plaintiffs argue that the scope of HB18 inappropriately restricts speech "related to" several topics, such as "discussions of *Hamlet*." That is wrong. HB18 narrowly targets content promoting, glorifying, or facilitating specific topics like self-harm, child pornography, and human trafficking, not anything "related to" such topics. Tex. Bus. & Com. Code §509.053(a). Hamlet's soliloquy about suicide does not promote, glorify, or facilitate actual suicide. Literary exploration of mental-health issues is not the same as a Reddit thread encouraging teens to commit suicide or teaching them how to harm themselves.

Second, the SEAT plaintiffs hypothesize (at 67) that HB has "substantially more unconstitutional applications than lawful ones." But they don't show their work. And that claim defies logic in any event. HB18 focuses on filtering a narrow subset of egregious content, like X posts promoting or facilitating child pornography, and leaves the vast majority of protected speech untouched. It is simply untrue that "99% of the speech [HB18] restricts is protected." SEAT.Resp.67. The record shows that only approximately 1% of DSP content is harmful (Meta: 0.07% nudity; X: 0.01% violations; Snap: 0.01% violations). ROA.25-50096.594. And it bears repeating that HB18 requires only that DSPs monitor and filter *this* 1% of material and that they do so only for minors.

Third, the SEAT plaintiffs argue (at 19-20) about one instance of HB18 supposedly chilling a 17-year-old college freshman's debate research. But they conveniently ignore that HB18 protects all minors, including vulnerable young children, from harms like grooming and trafficking. Tex. Bus. & Com. Code §509.001(4). Restricting a 10-year-old's access to a Reddit post promoting cutting or bulimia is clearly constitutional, and SEAT's exclusive focus on older minors inflates their claims by ignoring younger minors. In all cases, under *Moody* it is *plaintiffs'* burden to tease out these different applications and establish which are constitutional and which are not. That plaintiffs resist acknowledging any constitutional applications of HB18 is telling.

Additionally, the SEAT plaintiffs argue (at 49, 54-56), without any support, that social media categorically poses no mental-health risk to minors. But *Moody* itself

10

emphasized the obvious: "today's social media pose dangers not seen earlier: No one ever feared the effects of newspaper opinion pages on adolescents' mental health." 603 U.S. at 733. Indeed, the State has a compelling interest in protecting minors from harmful content, as recognized by the Supreme Court. *E.g.*, *Free Speech Coal., Inc. v. Paxton*, 145 S. Ct. 2291, 2317 (2025). And HB18's narrow focus—targeting only approximately 1% of content like X posts glorifying child pornography—directly addresses this interest.

The SEAT plaintiffs also unconditionally argue (at 65) that "every application" of HB18 to protected speech is unconstitutional. And once again, they offer no specifics demonstrating that claim. To the contrary, the State has shown, although it is not its burden to do so, that HB18 has many constitutional applications, such as filtering Reddit posts glorifying suicide or promoting self-harm techniques and TikTok videos promoting eating disorders. SEAT's blanket assertion ignores these valid applications, failing to meet *Moody*'s requirement to show unconstitutional applications predominate. To meet its burden, plaintiffs and the district court should have analyzed how HB18 applies to specific material on specific platforms—and to different age groups, such as young children versus older teens. Their failure to provide a comprehensive analysis forecloses their requested facial injunction under *Moody*.

The CCIA plaintiffs' attempts at challenging HB18 likewise fall short. They incorrectly argue (at 66) that Texas must show HB18 is narrowly tailored under any level of scrutiny. But narrow tailoring as such is required only for strict scrutiny, not

11

intermediate scrutiny (commercial speech or obscenity) or rational basis (conduct). As to the former, HB18's restrictions on obscenity and commercial speech satisfy intermediate scrutiny by directly advancing Texas's important interest in protecting minors without unduly restricting speech. CCIA's misstatement of the legal standard fails to undermine HB18's legitimacy.

The CCIA plaintiffs also argue (at 21, 23) that literary works like Romeo and Juliet and American Beauty are within HB18's scope because they address "teenage sexual activity and the sexual abuse of children." This is a red herring. HB18 targets content promoting or facilitating actual child sexual abuse, not artistic or literary depictions of teenage sexuality. A social-media post offering instructions for how to groom and abuse a child is not the same thing as Romeo and Juliet's narrative exploration of teenage romance. CCIA's attempt to equate classic works of literature with the most insidious online content is sophistry and, in any event, fails to establish that HB18 is facially unconstitutional under *Moody*.

Finally, the CCIA plaintiffs seem to argue (at 36-37, 49-50) that conduct already criminalized, like child pornography, cannot be civilly regulated by HB18. But overlapping criminal and civil penalties are permissible and common. *E.g.*, *One Lot Emerald Cut Stones & One Ring v. United States*, 409 U.S. 232, 235 (1972) (per curiam). HB18's civil regulations, such as filtering child pornography from minors' view, permissibly complement existing criminal laws, enhancing protection for minors without sacrificing their access to social media.

In sum, HB18's monitoring-and-filtering provisions have numerous constitutional applications, including unprotected speech (e.g., Reddit forums promoting child pornography), conduct (e.g., TikTok videos facilitating trafficking), commercial speech (e.g., Instagram ads for fake IDs), and some restrictions on more protected speech. Those applications trigger varying levels of scrutiny: no scrutiny for unprotected speech or conduct, intermediate scrutiny for commercial speech, and strict scrutiny for protected speech. But again, even assuming strict scrutiny applies to some applications of HB18, HB18 may well satisfy it. Social media platforms "host a 'staggering' amount of content." *Murthy v. Missouri*, 603 U.S. 43, 50 (2024) (quoting *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 480 (2023)). The State need not sit idly by just because protecting children from online harms is difficult and complicated. *Free Speech Coal.*, 145 S. Ct. at 2299. Texas has a compelling interest in protecting all minors—including young children—from harms like grooming, trafficking, and child pornography. HB18 is narrowly tailored, aligning with the existing filtering practices of DSPs. The plaintiffs' failure to even try to carry their burden under *Moody* forecloses their pre-enforcement facial challenge.

## III. HB18's Threshold Coverage Definitions Are Content-Neutral.

Plaintiffs' arguments that HB18's threshold coverage definitions are content-based are meritless. Those definitions target platform mediums and functionality, not specific speech content.

A law is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155,

163 (2015). In contrast, a content-neutral law applies to all expression without regard to its message. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994). The question is whether the law "draws distinctions based on the message a speaker conveys." *Reed*, 576 U.S. at 163-64.

Here, the SEAT (at 45–47) and CCIA (at 30–33) plaintiffs argue that HB18's DSP definitions are content-based because they target "social" content while exempting news and sports platforms. That is wrong. HB18 distinguishes social (user-generated) from non-social (DSP-generated) content based on *how* content is posted, not *what* content is posted. Tex. Bus. & Com. Code §509.002(b)(10). An X post about the Academy Awards is user-generated social content; a CNN article about the same event is not. A Reddit forum discussing a cooking recipe is user-generated social content; a New York Times editorial about the same recipe is not. A TikTok video about a concert is user-generated social content; a Rolling Stone review of the same concert isn't. These can't possibly be content-based distinctions, because the same content can be user-generated or DSP-generated. That is the definition of content-neutrality.

The CCIA plaintiffs argue (at 31) that HB18 "single[s] out the press" for disfavored treatment, a core First Amendment concern. But HB18 explicitly exempts news platforms, ensuring they are not targeted. Tex. Bus. & Com. Code §509.002(b)(10).

And the CCIA plaintiffs argue (at 35-40) that HB18 is overinclusive because it regulates websites regardless of whether minors use them, and underinclusive

because it fails to regulate enough platforms. But states may prioritize high-risk platforms without regulating the entire internet. *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 801-02 (2011); *Free Speech Coal.*, 145 S. Ct. at 2318. HB18 applies only to known minors on interactive social platforms where harmful user-generated material is more likely to proliferate. It is perfectly reasonable to exempt news stories generated by traditional media outlets and instead target platforms built on user-generated posts, which can contain everything from baking recipes to conspiracy theories to child pornography—the latter of which is a focus of HB18 and unlikely to be found on curated news platforms.

HB18's DSP definitions are content-neutral because they differentiate based not on the message conveyed, but rather on how information is proliferated irrespective of the content of the information. Thus, those definitions are content-neutral. *Turner*, 512 U.S. at 643-44.

## IV. HB18's Targeted-Advertising Provisions Apply To Commercial Speech, Not Public-Service Announcements.

HB18's targeted-advertising provisions do not, as the SEAT plaintiffs claim, apply to broad speech categories including non-commercial PSAs.

To begin, the SEAT plaintiffs argue (at 23-24) that HB18 covers advertisements involving "purely educational resources about vaccine access." To the contrary, §509.055 restricts only targeted advertisements to known minors for products, services, or activities unlawful for minors, such as vaping products or fake IDs, not non-commercial PSAs like vaccine access campaigns. Tex. Bus. & Com. Code

15

§509.055. For example, an Instagram advertisement promoting illegal vaping products to teens falls within §509.055's scope, while a PSA about vaccine clinics does not.

Furthermore, SEAT's broad claim that HB18 covers "any advertisements" mischaracterizes §509.052(2)(D)'s focus on *commercial* advertisements intentionally targeting *minors*, which passes constitutional muster by creating an exception that allows a parent to approve a minor's access to targeted advertisements if they choose to do so.

Finally, even assuming the targeted-advertising provisions apply to things like PSAs, as the SEAT plaintiffs claim, they would still have to carry their burden under *Moody* of showing that a substantial number of the provisions' applications are unconstitutional compared to its constitutional applications. But they have not even tried to do so here.

## V. HB18's Terms Are Not Unconstitutionally Vague.

A statute is unconstitutionally vague only if it fails to provide fair notice of prohibited conduct or encourages arbitrary enforcement. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). In other words, if "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Id.* (citation omitted). Civil statutes like HB18 require less precision than criminal statutes. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498-99 (1982).

The SEAT and CCIA plaintiffs argue (at 59-62 and 46-50, respectively) that HB18's terms "promote," "glorify," and "facilitate" are unconstitutionally vague and could be enforceable against "discussions of Hamlet" or statements like "drugs are glorious!" That is wrong. "Promote," "glorify," and "facilitate" are precise, common-sense terms indicating positive advocacy, encouragement, or advancement. An X post explicitly promoting self-harm techniques or child pornography, or an anonymous Reddit thread facilitating human trafficking clearly fall within HB18's scope, while a Hamlet discussion exploring timeless literary themes does not. Tex. Bus. & Com. Code §509.053(a).

Nor are the CCIA plaintiffs correct (at 46-47) that the term "promote" is vague under *Baggett v. Bullitt*, 377 U.S. 360 (1964) and *United States v. Williams*, 553 U.S. 285 (2008). *Baggett* struck down anti-communist loyalty oaths for public teachers due to their use of ambiguous terms like "subversive," which lacked any clear definition or context, leading to widespread self-censorship among teachers and risking arbitrary enforcement without guidance on what constituted disloyalty. 377 U.S. at 372. By contrast, HB18's "promote" is anchored to specific enumerated topics (e.g., self-harm, child pornography), providing DSPs with objective criteria for application, much like statutes upheld in other contexts where terms are narrowed by surrounding provisions.

*Williams* upheld "promotes" in a criminal child-pornography statute, finding it sufficiently clear because it connotes active encouragement or solicitation, not passive discussion or unrelated expression. 553 U.S. at 304. As the Court explained:

17

> [T]he term "promotes" does not refer to abstract advocacy, such as the statement "I believe that child pornography should be legal" or even "I encourage you to obtain child pornography." It refers to the recommendation of a particular piece of purported child pornography with the intent of initiating a transfer.

*Id.* at 300. Importantly, *Williams* applied a criminal vagueness standard even stricter than HB18's civil framework requires. *See also Ward*, 491 U.S. at 794 ("[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity").

The term "promote" requires encouragement or advancement, not mere mention or exploration. An X post promoting self-harm by providing methods or glorifying it as a solution to depression clearly falls within HB18's scope, while a post discussing addiction recovery or a general mental-health-awareness campaign does not. DSPs' advanced AI and human-moderation systems distinguish such content daily, handling billions of posts with identical terms like "promote" and "facilitate" in their guidelines—such as X's policy prohibiting content that "facilitate[es]" illegal transactions and Youtube's policy prohibiting content that "promotes . . . product[s] that contain[] drugs," ROA.24-50721.148—and demonstrating enforceability through contextual application.

Finally, as discussed below, *see infra* Section VIII, to the extent any word in HB18 is unconstitutionally vague, the Court can sever that term and leave the rest of the statute intact.

18

## VI. HB18 Is Not A Prior Restraint.

HB18 is not a prior restraint because it does not require pre-publication censorship. It requires post-publication filtering, only for minors, of a narrow category of material. Plaintiffs' arguments to the contrary are incorrect.

The SEAT plaintiffs argue (at 38-43) that HB18's monitoring provisions require DSPs to "classify the suitability of third-party content before publishing it." That is wrong. A prior restraint involves government pre-clearance or licensing that blocks publication. *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 713-16 (1931). Here, HB18 mandates post-publication filtering of content "promoting, glorifying, or facilitating" things like trafficking, child pornography, and self-harm—and only for minors. This post-publication approach, applicable only to verified underage users, lacks the blanket pre-publication censorship characteristic of a prior restraint.

The SEAT plaintiffs argue (at 38–43) that cases like *Bantam Books*, 372 U.S. at 67, support their prior-restraint arguments. But *Bantam Books* involved a state commission directly threatening publishers with prosecution to suppress specific books deemed obscene, creating a system of informal censorship that blocked publication without judicial oversight. *Id.* at 66–67. HB18, by contrast, requires post-publication filtering—not a pre-publication ban—which lacks the direct pre-publication suppression central to *Bantam Books*. Other cases cited by the SEAT plaintiffs are inapposite as well.

- *American Communications Ass'n, CIO v. Douds*, 339 U.S. 382, 390 (1950), upheld labor-union oaths under the Taft-Hartley Act, a context unrelated to publication or censorship.

- *Alexander v. United States*, 509 U.S. 544, 550-51 (1993), held that asset forfeiture as a RICO punishment for distributing obscene materials did not constitute a prior restraint.

- *Vance v. Universal Amusement Co.*, 445 U.S. 308, 316-17 (1980) (per curiam), struck down an ordinance imposing indefinite injunctions on future adult films, before they were determined to be obscene, unlike HB18's targeted post-publication filtering of specific content without requiring pre-publication approval.

- *Reed*, 576 U.S. at 163, invalidated content-based sign restrictions under strict scrutiny—the restrictions favored political signs over religious signs—not the prior-restraint doctrine.

- And *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 585 (1983), held that a tax uniquely targeting and burdening the press violated the First Amendment.

The plaintiffs' cited cases fail to demonstrate that HB18 constitutes a prior restraint, as they either involve distinct First Amendment issues, taxes or penalties, or pre-publication government control.

The CCIA (at 12, 16) and SEAT (at 39) plaintiffs argue that HB18 "deputizes covered businesses into serving as censors for the State," citing *NetChoice, LLC v.*

*Bonta*, 113 F.4th 1101, 1118 (9th Cir. 2024). The cited language from *Bonta*—a nonbinding case from the Ninth Circuit—addressed the requirement that covered entities determine themselves what was "harmful or potentially harmful content, contact, or conduct online." *Id.* at 1116. The court found that initial decision-making requirement, made on behalf of the State, troubling. Covered entities also had to prepare "reports identifying, for each offered online service, product, or feature likely to be accessed by children," *id.*, further requiring the entities to act on behalf of the State. But HB18 does no such thing. Under HB18, DSPs are not required to draft reports or judge on behalf of the State whether certain content is harmful for children. The State has already made that decision and enumerated narrow topics that are inappropriate for minors. DSPs must then filter those narrowly defined categories from minors' view.

## VII.   Section 230 Does Not Preempt HB18.

Section 230 does not "prevent any State from enforcing any State law that is consistent with" it. 47 U.S.C. §230(e)(3). HB18 is consistent with §230 and thus is expressly not preempted. The CCIA plaintiffs' arguments to the contrary are incorrect.

The CCIA plaintiffs argue (at 51-53) that HB18 violates §230(c)(1), which prohibits treating interactive computer services "as the publisher or speaker of any information provided by another." Not true.

First, HB18 does not prohibit or punish the publication or speaking of anything; it requires DSPs to filter already published material—without requiring them to take

21

the material down or stop it from being posted—only for minors. In essence, HB18 treats DPSs as distributors, not publishers. For example, by requiring X to filter from minors' view a post glorifying child pornography or facilitating it with links to child-porn sites, HB18 imposes a conduct-based duty on material that was already published. It does not impute liability for the post's content as if X authored it, nor does it impose liability based on the harm the post causes users (or anyone else). *See Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, No. 31063/1994, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) (unpublished) (pre-§230 case holding internet service provider liable for posting a third-party's content). By requiring DSPs to protect minors from *viewing* narrow categories of already published content, HB18 "imposes liability purely based on whether [DSPs] comply with the statute, independently of whether the third-party speech that [DSPs] host harms anybody." *Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263, 285 (5th Cir. 2024), *aff'd*, 145 S. Ct. 2291 (2025); *see also Doe ex rel. Roe v. Snap, Inc.*, 88 F.4th 1069, 1071 (5th Cir. 2023) (mem. op.) (Elrod, J., dissenting from denial of rehearing en banc) (explaining that distributors are "only liable for illegal content of which they had or should have had knowledge"), *cert. denied*, 144 S. Ct. 2493 (2024).

Second, the CCIA plaintiffs argue (at 54-55) that §230's immunity broadly protects DSPs from state laws regulating content moderation. That too is incorrect. HB18 imposes no such liability but requires post-publication filtering consistent with §230(b)(3)'s goal of encouraging "technologies which maximize user control" over harmful content, especially for children. 47 U.S.C. §230(b)(3). Perhaps more

importantly, §230 expressly does not "prevent any State from enforcing any State law that is consistent with" it. *Id*. §230(e)(3). HB18 is consistent with §230. Take the parental-consent exceptions, for example. One of §230's stated policy goals is to "remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material." *Id*. §230(b)(4). HB18 does that by empowering parents to make decisions about whether particular content is appropriate for their children.

For the same reason, the CCIA plaintiffs are incorrect when they argue (at 56) that HB18 conflicts with §230's goal of promoting unfettered internet speech. Even §230 itself acknowledges than an open internet must yield to consistent State laws protecting children from inappropriate material. Because HB18 requires only that DSPs filter the worst material, and only for children, it balances free speech with child protection and parental oversight. If plaintiffs are right, then States are powerless to protect minors from such material. That cannot be true. *See generally Free Speech Coal.*, 145 S. Ct. 2291.

Nor does *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008), require preemption here. In *Doe*, the plaintiff attempted to impute liability to the DSP based on its publication of communications from another user which ultimately led to sexual assault. *Id*. at 420. HB18's requirements, like requiring DSPs to filter from minors' view TikTok videos promoting self-harm or X posts promoting child pornography, align with DSP practices and impose no such imputed liability. Indeed,

HB18 does not even require DSPs to remove these posts—it must only prevent minors from seeing them.

Finally, the CCIA plaintiffs argue (at 56-57) that they can assert §230 immunity while simultaneously invoking their own First Amendment protections. But the CCIA plaintiffs cannot have it both ways. If they are claiming the First Amendment protects their content-curation decisions, exempting them from government regulation, then they cannot also claim that §230 protects them because HB18 is improperly treating them "as the publisher or speaker of any information provided by another." 47 U.S.C. §230(c)(1). Invoking §230 preemption thus necessarily conflicts with the CCIA plaintiffs' First Amendment arguments because it concedes that none of the user-created speech on DSPs is the DSP's own speech, and they are immune from any attempts to hold them liable as if it were. *See, e.g.*, *Moody*, 603 U.S. at 729-30 ("A private party's collection of third-party content into a single speech product . . . is itself expressive, and intrusion into that activity must be specially justified under the First Amendment."). DSPs are either speakers and publishers (shielded by the First Amendment) or they are distributors of that which cannot be ascribed to them (shielded by §230 immunity).[1] *See Doe ex rel. Roe v. Snap, Inc.*, 144

---

[1] Moreover, current interpretations of §230 immunity are "unmoored from the text" and the "background legal principles against which it was enacted." *Snap*, 88 F.4th at 1071 (Elrod, J., dissenting from denial of rehearing en banc). "[A]rguments in favor of broad immunity under §230 rest largely on policy and purpose, not on the statute's plain text." *Doe v. Facebook, Inc.*, 142 S. Ct. 1087, 1088 (2022) (Thomas, J., respecting the denial of certiorari) (internal quotation marks omitted).

S. Ct. 2493, 2494 (2024) (Thomas, J., dissenting from the denial of certiorari) (explaining that §230 is not a "get-out-of-jail free card").

Either way, HB18's minor-focused filtering requirements align with §230's child-safety objectives and are not preempted.

## VIII. HB18 is Severable.

Plaintiffs' severability arguments are wrong because HB18's provisions are independently operable, and Texas law—including HB18 itself—strongly favors severing statutes to preserve valid provisions.

Texas law strongly favors severability of statutes. *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 844 (Tex. 1990). The Texas Code Construction Act provides that, "[u]nless expressly provided otherwise, if any provision of a statute or its application to any person or circumstance is held invalid," the invalidity does not affect the rest of the statute. Tex. Gov't Code §312.013(a). And HB 18 itself contains an express severability clause reinforcing this principle. Act of May 28, 2023, 88th Leg., R.S., ch. 795, §5.01, 2023 Tex. Gen. Laws 2516, 2524.

The CCIA plaintiffs argue (at 28-29) that HB18's "content categories" are not severable. But any term within the statute's monitoring-and-filtering provisions (Tex. Bus. & Com. Code §509.053), can be severed without affecting the rest. If "glorifying" is unconstitutionally vague, for example, then the statute can still apply to "promoting" and "facilitating." Indeed, the CCIA plaintiffs appears to concede (at 25-26) that the term "facilitates" targets particularly harmful content—like crimes—making it, at least in SEAT's view, less problematic than the others. And

25

more broadly, the monitoring-and-filtering provisions can function independently of other provisions, like the targeted-advertising provisions (Tex. Bus. & Com. Code §509.055).

HB18's severability clause and independent terms and provisions ensure that valid portions remain enforceable.

## IX. Amici's Arguments Are Cumulative And Unpersuasive.

Amici largely repeat plaintiffs' arguments. The State highlights three key points.

First, Texas agrees that "[s]ocial media has flourished into an important hub of diverse expression," EFF.Brief.6, and almost all minors use social media, *see* ACLU.Br.8 (noting that 60% of teens use TikTok and Instagram and 90% use Youtube). But not all online material is suitable for children, and the "state's authority over children's activities is broader than over like actions of adults." *Prince v. Massachusetts*, 321 U.S. 158, 168 (1944). The Supreme Court has explained that minors "have long been thought to be more susceptible to the harmful effects of sexually explicit content, and less able to appreciate the role it might play within a larger expressive work." *Free Speech Coal.*, 145 S. Ct. at 2304. When online content is harmful or obscene for a child, a State can use "'the ordinary and appropriate means' of exercising" its power to protect children by shielding them from such online content. *Id.* at 2306 (quoting 1 Joseph Story, *Commentaries on the Constitution of the United States* §430, at 412-13 (1833)). HB18 is a modest attempt to accomplish that goal.

Second, amici repeat plaintiffs' mischaracterization of *Moody*. Texas does not need to "justify" HB18's applications in this pre-enforcement facial challenge. NCAC.Brief.7. Rather, plaintiffs have the burden to establish that a substantial number of HB18's applications are unconstitutional, judged in relation to its plainly legitimate sweep. *Moody*, 603 U.S. at 723. That burden is not only "hard to win," *id.*, but also "a daunting, if not impossible, task," *id.* at 745 (Barrett, J., concurring), that is "strongly disfavored," *id.* at 777 (Alito, J., concurring in the judgment). The district court did not conduct a proper *Moody* analysis, and plaintiffs cannot continue to ignore their *Moody* burden on appeal.

Third, amici's accessibility and privacy arguments about age verification are overblown. *See* EFF.Br.17-26. The Supreme Court found no accessibility issue with online age verification requirements in *Free Speech Coalition*, which acknowledged "all other contexts where the law draws lines based on age" and "the long, widespread, and unchallenged practice of requiring age verification for in-person sales of material that is obscene to minors." 145 S. Ct. at 2315. Nor did the Court dwell on online-anonymity concerns. It emphasized the "social stigma" that has always attached to pornography was no "reason to exempt the pornography industry from [an] otherwise valid regulation." *Id.* at 2319; *see also United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 209 (2003) (plurality opinion) (rejecting the "risk of embarrassment" as a cognizable speech burden). So too here: the potential embarrassment some users might experience when verifying their age is no reason to exempt DSPs from valid legislation.

## X. The Remaining Injunction Factors Favor Texas.

Because plaintiffs are unlikely to succeed on the merits, the district court's orders granting preliminary injunctions were "improvident as a matter of law" and this Court "need not address" the remaining prongs of the preliminary injunction standard. *Hoffman v. Westcott*, 131 F.4th 332, 335 (5th Cir.), *cert. dismissed*, 145 S. Ct. 1951 (2025). Regardless, Plaintiffs have not met their burden on the other factors; any alleged harms are speculative and outweighed by Texas's interest in protecting minors.

The CCIA plaintiffs argue (at 57-58) that, since they are likely to succeed on the merits of their First Amendment challenge, HB18 necessarily causes irreparable harm. But as discussed throughout, Plaintiffs have not established a likelihood of success—particularly given the complete absence of a legitimate *Moody* analysis. Plaintiffs thus have no right to "the extraordinary remedy of injunction." *Nken v. Holder*, 556 U.S. 418, 428 (2009) (internal quotation marks omitted).

The CCIA plaintiffs also argue (at 57-58) that potential compliance costs will impose significant harm on DSPs. Even assuming that's true, it must outweigh Texas's interest in protecting children. DSPs like X, Reddit, and Instagram already filter billions of posts using sophisticated AI and human-moderation systems, rendering compliance costs consistent with existing practices and insufficient to outweigh the State's compelling interest in protecting children.

The SEAT plaintiffs argue (at 68) that they face "irreparable harm" from chilled speech due to HB18's monitoring provisions. But injunctions—particularly

pre-enforcement facial injunctions—are extraordinary remedies requiring a concrete, non-speculative harm that outweighs the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As discussed above, SEAT's speculative claims of chilled speech lack any plausible connection to HB18's terms and thus fail to demonstrate irreparable harm.

Finally, SEAT argues (at 56) that HB18 restricts minors' "access to social media." But HB18 allows minors to use social media freely and doesn't even require that DSPs remove any social-medial content. It requires only filtering, of only 1% of content, only for minors.

The balance of equities and public interest in protecting minors from insidious harms, as recognized in *Murthy* and *Brown*, strongly favor Texas, requiring reversal or vacatur of the district court's injunctions.

## Conclusion

The Court should reverse the pre-enforcement facial injunctions or at minimum vacate them and remand so that the district court can conduct a proper *Moody* analysis in the first instance.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

WILLIAM R. PETERSON
Solicitor General

BRENT WEBSTER
First Assistant Attorney General

/s/ Cameron Fraser
CAMERON FRASER
Cameron.Fraser@oag.texas.gov
Assistant Solicitor General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

ERIC S. ABELS
Assistant Attorney General

*Counsel for Defendant-Appellant*

## CERTIFICATE OF SERVICE

On August 13, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Cameron Fraser
CAMERON FRASER

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,979 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Cameron Fraser
CAMERON FRASER